(Nos. 38635, 39000 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LYMAN MOORE *et al.,* Plaintiffs in Error.

*Opinion filed Sept. 23, 1966.—Rehearing denied Oct. 27, 1966.*

WILLIAM G. CLARK, Attorney General, of Chicago, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and KENNETH L. GILLIS, Assistant State's Attorneys, of counsel,) for the People.

ROBERT L. SKLODOWSKI, of Niles, appointed by the court, for plaintiff in error Lyman Moore in Docket No. 38635.

JAY A. SCHILLER, of Chicago, appointed by the court, for plaintiff in error Jerry Barbee in Docket No. 39000.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Lyman Moore, Jerry Barbee, and Herman Magby were tried jointly for the armed robbery, on July 27, 1962, of Wally's Certified Market in Harvey, Illinois. The jury found Moore and Barbee guilty, and Magby not guilty. Moore was sentenced to a term of imprisonment of not less than 20 nor more than 40 years, and Barbee was sentenced to a term of imprisonment of not less than 15 nor more

than 30 years. Both judgments are before us for review, Moore's as No. 38635, and Barbee's as No. 39000. Because of the similarity of the factual background and the contentions of the two defendants, we have consolidated the cases for opinion.

Each defendant contends that his judgment of conviction should be reversed because evidence illegally seized from Barbee's automobile was erroneously admitted in evidence, because the court erroneously permitted the prosecution to present evidence of an unrelated criminal offense which involved the firing of shots at a police officer, and because the prosecution displayed weapons before the jury in an improper and prejudicial manner. Each defendant also asserts other errors that relate to him alone.

We consider first the asserted error in the trial judge's rulings upon the motions to suppress. Each defendant filed a separate motion to suppress the use in evidence of guns alleged to have been illegally seized. In this court the claim of illegal search and seizure is restricted to a single weapon, a sawed-off shotgun taken by police officers from Barbee's automobile on the morning of October 31, 1962. Separate hearings were had upon each motion, but the evidence did not differ significantly.

At each hearing officer Joseph Gorman of the Chicago Police Department was the principal witness. He testified that at approximately 1:00 A.M. on October 31, 1962, he received a radio call that a police officer had been fired upon and needed assistance. He responded, and met officer Thomas Clifford, the officer who had been fired upon. Clifford told Gorman that when he first heard shots, he turned and saw a man standing in front of a parked automobile. A second man jumped from the driver's seat, and the man in front of the car then fired another shot in Clifford's direction. The two men ran together down the street and through a gangway between two houses. A search for the two men was unsuccessful, and after an evidence tech-

nician had examined the car for fingerprints, officers Gorman and Clifford searched it. In a cloth bag on the back seat of the car they found the loaded sawed-off shotgun.

The officers had not obtained a warrant for the search of the car, and the search did not accompany an arrest. After the car was searched it was kept under police surveillance. Moore and Barbee were not arrested until about 5:30 A.M. when they returned and started to get in the car.

The defendants rely heavily upon *Preston* v. *United States,* 376 U.S. 364, 11 L. Ed. 2d 777, in which the Supreme Court of the United States held invalid the search of an automobile after its occupants had been arrested and taken to the police station. The court there phrased the issue "whether the facts of this case are such as to fall within any of the exceptions to the constitutional rule that a search warrant must be had before a search may be made." (376 U.S. at 367.) The defendants point out that the search in this case did not accompany an arrest, and they argue that since the officers were able to "stake out" the car, it was effectively in police custody, and the search without a warrant was invalid. We do not agree.

The unique facts of this case are only awkwardly analogous to any decided case of which we are aware. The car was not moving, (*cf. Carroll* v. *United States,* 267 U.S. 132, 69 L. Ed. 543,) and the search did not accompany an arrest. (*Cf. Abel* v. *United States,* 362 U.S. 217, 4 L. Ed. 2d 668.) But the fourth amendment is concerned with unreasonable searches and seizures, and the reasonableness of the conduct of police officers is not to be narrowly circumscribed by the chance boundaries of decided cases. Hindsight might suggest that as things turned out it would have been possible for the officers to appear before a magistrate and get a search warrant before the defendants returned to the car. But the officers had no way of knowing when, or if, the defendants would return. Similarly, they had no way of knowing whether the defendants, if they did return, would

attempt to secure a weapon from the car and make their escape. Whether the car was effectively in police custody depended upon the ability of the officers to prevent the defendants from moving it when they returned. They succeeded, but before the event its outcome could not have been predicted.

In this case, moreover, the officers were confronted in the middle of the night with a critical situation. It was reasonable to assume that the explanation for the shots fired at officer Clifford might be found in the car which the defendants abandoned when they fled. The officers were under the highest duty to determine the cause of that shooting, and to apprehend the men who fired the shots. Their failure to act promptly might have subjected them to discipline. When a police officer could justifiably be disciplined for failure to act, his action can hardly be characterized as unreasonable.

The robbery with which the defendants were charged occurred on July 27, 1962. Witnesses to the robbery testified that the sawed-off shotgun recovered from Barbee's car was similar to a weapon used by Magby during that crime. After this testimony, the shotgun was received in evidence. The defendants contend that references to the shooting on October 31, 1962, just prior to the recovery of the shotgun, were erroneously permitted to come to the jury's attention, and they claim that they were thereby deprived of their right to a fair trial. They rely on the proposition that "the guilt of an accused cannot be established by proving that he committed other offenses and so is an evil man and therefore more likely to have committed the crime charged." *People* v. *Harvey,* 12 Ill.2d 88, 91.

The first reference at the trial to the shots fired at officer Clifford occurred during the prosecutor's opening statement. The defense immediately objected and asked to be heard in chambers. There, each defendant joined in a motion that a mistrial be declared. The court denied this motion.

The defendant Magby then requested a special instruction that the prosecutor's statement be disregarded as to him. The court indicated its willingness to give such an instruction, but Magby's request was withdrawn. No other motion or objection was made at this time by any defendant.

Officer Clifford was later called as a witness by the State. He was asked whether anything unusual occurred during his patrol on October 31, 1962. Before he could answer the defendants asked to be heard. During the colloquy between court and counsel that followed, the prosecutor agreed not to elicit any testimony concerning the shooting incident from officer Clifford. At the suggestion of one of the defendant's attorneys, he also agreed to discuss the situation with the witness before his testimony to insure that the shooting would not inadvertently be called to the jury's attention. Officer Clifford's testimony then described the recovery of the shotgun without referring to the shooting.

In rebuttal, on the eleventh day of the trial, the prosecution called officer Charles Dean of the Chicago Police Department. Officer Dean testified to the conditions under which a confession by Barbee had been obtained. He was asked, "Now, describe the circumstances under which the defendant, Barbee, was held?" He replied: "He was held—when I come to work I was briefed on the case. He was being held after his arrest during the previous evening in the 6th district, and there was guns found in his car and he had fired on a police car."

After this statement, another conference was held in chambers, and each defendant renewed his motion for a mistrial. The court expressed its opinion that the statement was made inadvertently by the witness, and after extended discussion, the motions for mistrial were denied. In denying the motions, the court said: "The Court will instruct the jury to disregard the statement * * * if you wish me to do this now. I don't know whether you want it or not." When the trial was resumed, the court declared: "The jury

is instructed by the Court that the last statement made by the present witness will be disregarded by this jury in arriving at a verdict in this case. Disregard it in its entirety."

Thus, no evidence of the shooting was ever admitted by the court, although the shooting incident did come to the attention of the jury on two widely separated occasions. On one of these occasions the court instructed the jury to disregard the reference, and on the other there was no request for such an instruction. The question of the admissibility of evidence of the shooting incident, to explain to the jury how the shotgun came into the possession of the police, was a close one, and we can not say that the two brief references to it were so prejudicial as to deprive the defendants of a fair trial. There is no indication that the prosecution acted in bad faith, and in these circumstances, the trial court was within its discretion in refusing to order a mistrial, which was the only relief requested.

The prosecution exhibited five guns in the presence of the jury. Three of these guns were identified as similar to guns the defendants had carried during the robbery, and they were received in evidence. The other two guns were not so identified, and were excluded. The defendants maintain that the State's unnecessary display of weapons during the trial, coupled with the prosecutor's exhibition of a gun during his closing argument, was prejudicial to the defendants. An objection to the display of the gun during closing argument was sustained, but the defendants argue that their repeated motions for mistrial should have been allowed. The circumstances complained of were not, in our opinion, so prejudicial as to require a mistrial or a reversal of these judgments. Three of the weapons were received in evidence, and the exhibition of five weapons does not seem substantially more damaging than the exhibition of three.

The defendant Barbee argues that the trial court erred in permitting the prosecutor to read to the jury part of a newspaper clipping found in his home. The excerpt read,

"$9,611 store stickup. Four men armed with pistols and a sawed-off shotgun staged a brazen daylight robbery of Wally's Supermarket, 120 East 147th Street, shortly before 11 A.M." The search that produced the clipping was not challenged by the defendants' retained attorneys during the trial of the case, and its validity is not argued on this appeal. The argument for exclusion of the clipping rests instead upon its supposed prejudicial impact, yet the facts reported by the newspaper were all in evidence. Only the newspaper's characterization of the robbery as "brazen" was added, and the damaging impact of this characterization seems wholly insubstantial when contrasted with the legitimate probative value of the evidence.

The defendant Moore has filed a *pro se* brief to supplement that of his attorney. He argues that testimony concerning an oral confession by Barbee was erroneously admitted into evidence. The confession contained no reference to Moore, however, and the court instructed the jury that it was not to be considered with regard to him. The record does not reveal that Moore made a timely motion for a separate trial, and in these circumstances, the admission of the confession was not error.

Moore also maintains that the evidence was insufficient to support his conviction. Although the defense introduced the business records of a country club which tended to show that Moore was working there as a cocktail waiter at the time of the robbery, three witnesses placed him at the scene of the crime. One of these witnesses was the cashier at the "Courtesy Counter" at Wally's Certified Market. She testified that Moore told her, "Put the money in the bag," that he took $6,000 from the desk at the Courtesy Counter, and that he took another $3,000 from a nearby safe. This witness said that she was standing within three feet of Moore at the time of these occurrences. It was the jury's responsibility to determine the credibility of this testimony, and we see no reason to interfere with its determination.

Moore has advanced other contentions which, in our opinion, do not require discussion. The judgments of the circuit court of Cook County are affirmed.

*Judgments affirmed.*