THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* GLORIA J. FELTON, Defendant-Appellee.

(No. 73-173; ▮▮▮▮▮▮▮▮▮)

Second District—June 14, 1974.

F. Lawrence Lenz, State's Attorney, of Freeport (Dennis P. Drda, Assistant State's Attorney, of counsel), for the People.

No brief for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The State appeals from an order granting defendant's motion to suppress a revolver as evidence seized from her in a warrantless search, after which she was charged with violation of weapons and gun-registration laws (Ill. Rev. Stat. 1971, ch. 38, pars. 83—2(a) and 24—1(a)(4)).

No answering brief has been filed by defendant. While such failure would permit the exercise of our discretion to reverse pro forma (*People v. Spinelli* (1967), 83 Ill.App.2d 391, 393), we have concluded that the merits of the case should be reached to avoid an unjust result. See *People v. Marro* (1972), 4 Ill.App.3d 197, 201.

At the hearing held on the motion to suppress, Officer Kramer of the Freeport Police Department testified that on March 20, 1973, he received a telephone call from an attendant at a gas station concerning a theft of sunglasses. He proceeded to the station where the attendant explained that the glasses were missing after two black men had tried on glasses while he put gasoline in their car. No mention was made of defendant, a black woman.

The attendant described the car, including the license number. Later the officer apprehended a car matching the description carrying two black men and the defendant. The officer asked the driver for his driver's license, and ordered all of the occupants out of the car. After exiting the two men were frisked and defendant's coat pockets were checked. The officer stated he had no reason to believe that defendant was involved in the theft of the sunglasses. Nor was anyone formally placed under arrest. When the driver asked the reason for the officer's

action, Kramer told him he was checking out a complaint and that the driver said "Go ahead."

The car was then thoroughly searched by Kramer and another officer who arrived at the scene, but no sunglasses were found. Kramer then returned to the individuals and searched the crotch and belt area of the men, and rechecked the defendant's coat pockets.

Officer Kramer further testified that defendant had her arms folded in front of her and was holding her leather hip-length coat shut. He asked defendant to remove her coat thinking that she might have the sunglasses concealed under the coat. However, defendant refused to do so, turned partially away, hesitated and directed what the officer considered a puzzled look toward one of the others. The officer asked a second time, then stepped in front of her, took hold of her hands and the coat at the same time and pulled them apart. As he did so, his right hand touched something hard near her left arm which turned out to be a loaded revolver.

Kramer testified that at no time did he ask defendant's consent to search her person. He also stated that the gas station attendant's complaint had made no mention of firearms and the officer had no reason to believe he would find any. Nor was Kramer apprehensive of an assault or attack against him at the time of the second search of the individuals.

On these facts, the State contends that the search of the defendant was reasonable and therefore valid under the United States and Illinois Constitutions because the officer had probable cause to search the defendant even though the search was not incident to a valid arrest.

We conclude that under the circumstances shown in the record, the State did not satisfy its burden to prove proper justification for the warrantless search and that the court therefore properly granted the motion to suppress.

■■ It is beyond dispute, as the State concedes, that both the Illinois and the United States Constitutions protect an individual from unreasonable searches and seizures. (See *People v. Grod* (1944), 385 Ill. 584, 586; *People v. Tassone* (1968), 41 Ill.2d 7, 10); and that a search may not precede an arrest and serve as part of its justification. *Sibron v. New York* (1968), 392 U.S. 40, 63, 20 L.Ed.2d 917, 934-935, 88 S.Ct. 1889.

Since Officer Kramer testified that he had no probable cause to believe that defendant had committed or was about to commit an offense and said that he did not arrest defendant before the search, the cases cited by the State which involve searches incident to a lawful arrest are not particularly helpful. (*E.g. United States v. Rabinowitz* (1950), 339 U.S. 56, 94 L.Ed. 653, 70 S.Ct. 430; *People v. Holloman* (1970), 46 Ill.2d

311; *People v. Pickett* (1968), 39 Ill.2d 88; *People v. Georgev* (1967), 38 Ill.2d 165; *People v. Carlton* (1965), 58 Ill.App.2d 163.) Recently decided *United States v. Robinson* (1973), 414 U.S. 218, 38 L.Ed.2d 427, 94 S.Ct. 467, is also distinguishable by these facts.

Likewise under the circumstances the warrantless search cannot be justified as a limited search for weapons. (*Cf. People v. Moore* (1966), 35 Ill.2d 399, 402-403; *Terry v. Ohio* (1968), 392 U.S. 1, 29, 20 L.Ed.2d 889, 910-911, 88 S.Ct. 1868.) And since the officer did not have probable cause to believe that defendant was committing an offense, *People v. Tassone*, 41 Ill.2d 7, *People v. Moore*, 35 Ill.2d 399, and *In Re Boykin* (1968), 39 Ill.2d 617, are similarly not controlling.

■■ The State has suggested that defendant's furtive gesture constituted an effort of concealment and was therefore an expression of the consciousness of guilt which warranted the officer's further search, citing *People v. Superior Court* (1970), 478 P.2d 449. But the California court noted that looks and gestures and movements taken alone are insufficient to constitute probable cause to search since they may, in fact, be consistent with innocence. The court held that it is only when the furtive gestures are coupled with other circumstances tending to show probable cause (such as open contraband or suspicious objects in plain view, or prior reliable information), that the suspicious movement will be included in the basis for finding probable cause for a search. Illinois authority is in agreement with this view. See *People v. Reed* (1967), 37 Ill.2d 91, 94. Compare *People v. McKnight* (1968), 39 Ill.2d 577, 579.

■■ In absence of any showing of probable cause, the principles limiting searches under stop-and-frisk circumstances control. The pertinent Illinois statutes (Ill. Rev. Stat. 1971, ch. 38, pars. 107—14 and 108—1.01) represent a codification of the holdings in *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868, and *Sibron v. New York*, 20 L.Ed.2d 917 (*People v. Lee* (1971), 48 Ill.2d 272, 278-279). Three restrictions are placed upon the right of policemen to "stop and frisk" individuals suspected of criminal acts: (1) the stop itself must be justified by specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant that intrusion; (2) assuming a valid stop, a limited search of the suspect for weapons is justified only if a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger; and (3) the authorized search is confined in scope to an intrusion reasonably designed to discover objects capable of use as weapons. *People v. Watson* (1972), 9 Ill.App.3d 397, 400.

The trial judge quite properly found that the search here did not

come within the statute or decisions. When officer Kramer investigated the complaint at the gas station, no mention was made of the presence of a black woman (contrast *People v. Fizer* (1972), 9 Ill.App.3d 397 (abstract opinion)). Upon apprehending the vehicle described, no one was placed under arrest. Kramer did not ask defendant for identification or explanation of her activities, as authorized by section 107—14 of the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 107—14). Kramer had no reason to believe that defendant was involved in the theft of the sunglasses (compare *People v. West* (1973), 13 Ill.App.3d 550, 555; see also *People v. McCarty* (1973), 11 Ill.App.3d 421, 422), nor was the officer apprehensive of an assault or attack against him at the time of his second search of the individuals. No mention of firearms had been made and the officer had no reason to believe that he would find any (contract *People v. Bennett* (1973), 14 Ill.App.3d 225 (abstract opinion)).

In view of the circumstances of this record, the evidence secured through the search of defendant's person originated in an unlawful act which made the evidence discovered inadmissible. The trial court's order of suppression is supported by the evidence and we therefore affirm.

Affirmed.

GUILD and RECHENMACHER, JJ., concur.