THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* RODNEY A. NALLY *et al.*, Defendants-Appellees.

Second District No. 78-60

Opinion filed May 3, 1979.

Phyllis J. Perko and Jan Tuckerman, both of State's Attorneys Appellate Service Commission, of Elgin, for the People.

Mary Robinson and Elizabeth Clarke, both of State Appellate Defender's Office, of Elgin, and Selwyn Coleman, of Roselle, and Joseph N. Lascaro, of Chicago, and Harry Schaffner, of Schaffner, Ariano & Castillo, of Elgin, for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The defendants, Rodney A. Nally, Lawrence K. Watson and Terry W. Sykes, were charged with theft of a motorcycle over $150 in value. Defendants moved to suppress the motorcycle on the ground that it was unlawfully seized from defendants' vehicle following a stop for a traffic violation. The State appeals from an order suppressing the evidence.

Watson was driving a van-type motor vehicle on State Route 31 on August 21, 1977, with Nally and Sykes as passengers. At approximately 2:30 a.m. West Dundee police officers stopped the vehicle solely because it was going 46 miles per hour in a 35-mile-per-hour zone. The driver walked back to the squad car and exhibited his Illinois driver's license which appeared to be in order. One of the officers proceeded to the front of the van to determine if there was a front license plate, shined his light into the windshield area and noticed the defendants, Nally and Sykes, in the van and a motorcycle behind them.

The officer ordered Sykes and Nally out of the van and asked for identification, which they supplied. The officer then asked if there was a motorcycle in the van to which Watson replied affirmatively and said that it belonged to a friend in Wisconsin and that they were on their way back from picking it up. The officer asked Watson if he could look at the motorcycle to which Watson replied, "Well, you are going to look at it anyhow [sic]." The officer testified that when he could not open the rear doors on the van he believed that Watson assisted him. The engine numbers on the motorcycle were checked with the Secretary of State which showed that no "warrants" existed on the motorcycle. The officer admitted the lack of registration might have indicated that it was, in fact, a Wisconsin motorcycle as the defendants had stated.

The officer then ordered the defendants to accompany him back to the station. In this connection he testified that because defendants had no proof of ownership of the motorcycle he had decided to take the bike into custody until proof of ownership could be established by the defendants or he could determine whether the bike was stolen. He further testified

that the reason he searched the vehicle was because the address given by Watson was a place where he knew that persons dealing in stolen motorcycle parts frequented; and he also recognized the name of Nally as a convicted burglar from a newspaper clipping he had read. The officers were not aware of any stolen motorcycle at the time of the arrest.

At the close of the hearing the trial court found that the officers had the right to scan the windshield with a flashlight after the traffic stop and to see that in plain view but further found that the mere fact that the officers knew that one of the defendants was a convicted burglar or lived at a certain address did not afford reasonable grounds upon which to base the ensuing search. The judge specifically found that there was a search.

The State contends that there was no search because the motorcycle was in plain view of the officers; that if there was a search the defendants consented; and that the subsequent seizure was reasonable in any event. We disagree.

■■■ There is no question that there was probable cause to make the stop for the traffic violation. We also do not agree with the defendants' argument that the officer had no right to look into the vehicle after it was found that the front license plate was properly mounted. The officer clearly had a right to look into the open interior of the car which was in plain view and the use of a flashlight did not affect this. (*People v. Bombacino*, 51 Ill. 2d 17, 22 (1972).) But we do not agree with the argument of the State that no search was involved. This might have been true if the motorcycle had been a clearly perceived fruit of the crime which the officers were then investigating, or if it were otherwise identifiable on plain view as contraband. Under the plain view doctrine, in addition to an initial lawful intrusion which affords the authorities the opportunity for the plain view, it is necessary to establish that the incriminating nature of the evidence in plain view was immediately apparent to the arresting officers. *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 29 L. Ed. 2d 564, 583-84, 91 S. Ct. 2022, 2038 (1971). See also *People v. Riggs*, 62 Ill. App. 3d 338, 339 (1978).

In reviewing searches of the contents of motor vehicles special rules apply based on the mobility of the vehicle. (See, *e.g.*, *People v. Wolf*, 60 Ill. 2d 230, 233-34 (1975).) The critical issue in reviewing searches incident to traffic arrests remains subject, however, to a test of reasonableness giving consideration to the nature of the offense and the surrounding circumstances. (*People v. Watkins*, 19 Ill. 2d 11, 18-19 (1960).) A lack of a rear license plate, together with nervous behavior of a defendant, did not justify a search in *People v. Reed*, 37 Ill. 2d 91, 93 (1967); and in *Watkins* while noting that the violation of a minor traffic law alone would not justify the search, the Illinois Supreme Court found a search reasonable when the violation of the law was coupled with the fact that the

defendant, whom the officers knew as a previous offender, ran when he saw the officers. (19 Ill. 2d 11, 19-20.) There are other instances of behavior in addition to the traffic violation which could justify a search. See *People v. Zeravich*, 30 Ill. 2d 275, 277 (1964); *People v. Crawford*, 64 Ill. App. 3d 861 (1978).

The cases cited by the State are distinguishable. In *People v. Rodriguez*, 15 Ill. App. 3d 814 (1973), the defendant was the owner of the car, did not have a driver's license and upon being asked about the shopping bag of clothes replied that he had stolen them. In *People v. Caruso*, 2 Ill. App. 3d 80 (1971), the fact that the police had overheard telephone conversations of persons placing bets with the defendant and saw racing forms in the room near the defendant gave probable cause to search the contents of a blender. In *People v. Bohannon*, 38 Ill. App. 3d 489 (1976), the officer had a "tip" that the defendant was stripping a car, heard the sound of a propane torch from the garage, received evasive answers from the defendant in the garage and also observed various automobile parts there. In *People v. Corrigan*, 45 Ill. App. 3d 502 (1977), the officer had a plain view of liquid dripping from the glove compartment, smelled the odor of alcohol and there was a hurried movement of the passenger. In *People v. Watkins*, 23 Ill. App. 3d 1054 (1974), the driver did not have a driver's license, the passenger made a furtive movement and the officer saw a gun in the front seat. There were similar additional factors to establish probable cause in other cases cited by the State.

Here, as the trial court found, there was no probable cause for the officer to conclude that the motorcycle was stolen. No burglary had been reported in the area, the officer had no knowledge of any recently stolen motorcycle and the license of the driver and the licenses on the van were in order. The officer testified that the only reason for the seizure was a suspicion based on the fact that he knew that Nally was a convicted burglar and that Watson lived at an address where he thought people "hung out" who dealt in stolen bikes. The totality of the evidence supports the conclusion of the trial judge that at the time of the seizure the police had no probable cause to suspect that any criminal activity was involved or that the motorcycle was connected with criminal activity. See *People v. Lichtenheld*, 44 Ill. App. 3d 647, 649 (1976).

The judgment is therefore affirmed.

Affirmed.

RECHENMACHER and NASH, JJ., concur.