THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES RICHARD KELLY, Defendant-Appellant.

Fifth District   No. 77-420

Opinion filed August 28, 1979.

82

KASSERMAN, J., dissenting.

Michael J. Rosborough and Jeff M. Plesko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Edward C. Eberspacher, State's Attorney, of Shelbyville (Raymond F. Buckley, Jr., and Curtis L. Blood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant Charles Richard Kelly was charged with unlawful possession of more than 30 but less than 500 grams of marijuana. He was convicted following a bench trial in the circuit court of Shelby County, and sentenced to the five months he had served in jail while awaiting trial, conditional discharge, and a $1000 fine payable over a two-year period. Kelly appeals, alleging only that the search which disclosed the cannabis was invalid.

At approximately 1:30 a.m. on December 18, 1976, defendant was driving his car north on Route 51 through the village of Moweaqua. Officers McLearin and Parker testified that at a four-way stop in the village they thought defendant's brake lights had not released and they began to follow him. They followed him to the edge of the village and then stopped him. McLearin approached defendant's car and told him that his brake lights were stuck in the "on" position. He then asked the defendant for his driver's license, which Kelly did not have with him at that time, although he did have one. Kelly testified that McLearin said something to the effect that "while he had me pulled over, why didn't he just check my driver's license."

From this point, the description of events varies with the parties. McLearin claimed that on shining his flashlight into the car, he saw a tire tool protruding from under the driver's seat, between the defendant's feet. He told defendant that the tire tool should not be in the passenger compartment, and to put it in the trunk. McLearin felt that to have such an object under the seat was illegal, although he knew of no law prohibiting it. Defendant got out of the car, and when he removed the tire iron, McLearin said an iron bar came into view. He told the defendant

that this, too, might be considered a weapon and it should go into the trunk as well. When Kelly pulled this object from under the seat, McLearin saw a kitchen knife, which prompted him to search the car. McLearin claimed that he asked Kelly if there was anything else of that nature under the seat, and that Kelly subsequently consented to a second search request, saying, "Go ahead, but you won't find anything." Officer Parker who was with McLearin at the time, corroborated most of McLearin's testimony.

The defendant, on the other hand, testified that after McLearin asked for his driver's license, he then asked if he had been smoking pot, which defendant denied. McLearin then told him to get out of the car, he shined his flashlight into the car and when he stooped to look at the floor, only then did he see the tire tool. The defendant was instructed to remove it and the iron bar. The kitchen knife did not come out at that time. It was found only after McLearin undertook a search of the car. After removing the bar, defendant was asked if there was anything else of that nature under the seat. He replied that there was not and that there was no need for a search. McLearin said that if there was nothing to feel guilty about, there was no reason he could not look. Defendant denied saying that he did not care if McLearin searched the car because he would not find anything, or that he gave consent for the search in any fashion. In denying that he said anything that could have been even remotely considered consent, he stated that "At 1:30 in the morning in the cold I would not agree to a search of my car. I would just as soon got gas and went on home."

It is undisputed that McLearin eventually entered the car and searched it. It is undisputed that he removed the ashtray from the dashboard and confronted Kelly with its contents, which included what appeared to be cannabis residue and seeds. McLearin re-entered the car (for the second time according to him but for the fourth time according to the defendant) and found a bag of what he thought was cannabis in the glove compartment. Defendant was then put under arrest for the first time.

The trial court found that defendant had consented to the search and that the cannabis was admissible into evidence. Defendant denied that he consented to the search of his automobile, and contends that even if he did consent, the consent was not knowing and voluntary. He further contends that the search was made without probable cause or reasonable suspicion, and that the trial court erred at a second suppression hearing in refusing to admit evidence that Officer McLearin regularly stopped young drivers on a pretext, then searched their automobiles without consent.

The State initially contends that defendant has waived any issue on

appeal because he failed to file a post-trial motion. Such contention is frivolous, because the law is well settled in Illinois that defendant need not file a post-trial motion if, as here, he is tried before the court and has raised the issue at the trial level. *People v. Tobin* (1938), 369 Ill. 73, 15 N.E.2d 687; *People v. Ford* (1974), 21 Ill. App. 3d 242, 315 N.E.2d 87.

■■ ■ It is undisputed that both the Illinois and the United States Constitutions protect an individual from unreasonable searches and seizures. (*People v. Felton* (1974), 20 Ill. App. 3d 103, 313 N.E.2d 642; *People v. Billings* (1977), 52 Ill. App. 3d 414, 367 N.E.2d 337.) The fourth amendment to the United States Constitution does not require that every search be made pursuant to a warrant. It prohibits only unreasonable searches and seizures. The relevant test is not the reasonableness of the opportunity to procure a warrant, but the reasonableness of the seizure under all circumstances. The test of reasonableness cannot be fixed by per se rules; each case must be decided on its own facts. (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 509-10, 29 L. Ed. 2d 564, 608, 91 S. Ct. 2022, 2060; *People v. Jefferies* (1972), 6 Ill. App. 3d 648, 285 N.E.2d 592.) However, all searches conducted without a valid search warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant. As we shall discuss further in our opinion, the defendant did not voluntarily consent to the search; therefore, the search must be justified, if at all, as incident to an arrest, or as a search made with probable cause and under exceptional circumstances as might exist when the object of the search is a motor vehicle. (*People v. Hering* (1975), 27 Ill. App. 3d 936, 327 N.E.2d 583.) In any event, a search cannot be justified only by what it produces, nor an arrest justified only by the fruit of an illegal search.

■■ Probable cause is required for any warrantless search and that is a reasonable belief that a search of a particular place or thing will disclose evidence, fruits of the crime, or is necessary for the protection of the police officer. (*People v. Hering; People v. Jefferies.*) Probable cause exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution to believe that an offense has been committed and that the person arrested has committed the offense. Fact sufficient to establish probable cause need not be sufficient to establish guilt beyond a reasonable doubt, and probable cause may be founded upon evidence which would not be admissible at trial. *People v. Blitz* (1977), 68 Ill. 2d 287, 369 N.E.2d 1238, *cert. denied* (1978), 435 U.S. 974, 56 L. Ed. 2d 68, 98 S. Ct. 1622.

■■ In this case, Officer McLearin, who observed that defendant was driving with defective brake lights, a traffic law violation (Ill. Rev. Stat. 1975, ch. 95½, par. 12—208), had probable cause to stop defendant and investigate his conduct within permissible limits. (See *People v.*

*Lichtenheld* (1976), 44 Ill. App. 3d 647, 358 N.E.2d 694.) Here the initial stop and detention of defendant was reasonable for the police to require identification. However, just as a search which is reasonable at its inception may violate the fourth amendment by virtue of its intolerable intensity and scope, so may an investigatory detention exceed constitutional bounds when extended beyond what is reasonably necessary under the circumstances which made its initiation permissible. (*Willett v. Superior Court* (1969), 2 Cal. App. 3d 555, 83 Cal. Rptr. 22.) In this case defendant was not initially arrested for a serious traffic violation or for any criminal offense, nor were there any circumstances which would indicate that the police were dealing with a criminal rather than a mere traffic offender. (*People v. Reed* (1967), 37 Ill. 2d 91, 227 N.E.2d 69; *People v. Jordan* (1973), 11 Ill. App. 3d 482, 297 N.E.2d 273.) Since the defendant was out of his car when McLearin searched it, the search could not have been predicated on McLearin's fear for his safety. (*People v. Myers* (1978), 66 Ill. App. 3d 934, 384 N.E.2d 516.) Also, there is nothing in the record to indicate that defendant was likely to escape. Finally, there are seldom fruits of a crime in an ordinary traffic stop. (See *Amador-Gonzalez v. United States* (5th Cir. 1968), 391 F.2d 308, 315-16 n. 8.) Therefore, we conclude that there was no probable cause to search defendant's vehicle or to ask him to remove the tire iron from the passenger compartment, since there was only probable cause to believe that defendant was a mere traffic violator. Further, where the reasons for stopping the defendant involved mere passive, nonculpable conduct on his part, we hold that it was an impermissible intrusion on defendant to require him to place the tire tool in the trunk.

■■ Two recent appellate court cases have addressed the same issue. In *People v. Myers* (1978), 66 Ill. App. 3d 934, 384 N.E.2d 516, defendant was stopped because his motor vehicle had only one operational headlight. After turning on his spotlight, the officer noticed the driver bend over as if he were placing something under the car seat. The officer approached the vehicle, advised the driver of the headlight violation, and asked for his driver's license. After the driver produced his license, the officer asked him to step out of the vehicle, and as he did so, the officer observed a brown paper grocery sack lying on the floor, partially beneath the driver's seat. While the driver was standing outside the car, the officer opened the sack and observed six clear bags containing a green vegetable-like substance which was subsequently determined to be cannabis. Defendant was escorted to a squad car and given *Miranda* warnings after which he made an incriminating statement concerning the contents of the sack. The trial court suppressed the cannabis and the statement, and the State appealed. The appellate court affirmed the suppression of evidence and ruled that there were insufficient suspicious

circumstances or specific information known to the officer to justify a limited search. Likewise in this case, there were insufficient suspicious circumstances or specific information known to the officer to justify a limited search.

In *People v. Nally* (1979), 71 Ill. App. 3d 238, 389 N.E.2d 262, defendants were stopped for driving in excess of the speed limit. Watson, the driver, walked to the squad car and exhibited his driver's license which appeared to be in order. One of the officers proceeded to the front of the van to determine if there was a front license plate, shined his light into the windshield area, and noticed Nally, Sykes, and a motorcycle in the van. The officer ordered Sykes and Nally out of the van and asked them for identification, which they supplied. In response to the officer's inquiry, Watson stated that the motorcycle belonged to a friend in Wisconsin and that they were taking it to him. When the officer asked Watson if he could look at the motorcycle, Watson replied, "Well, you are going to look at it anyhow." Although a check of the engine number did not reveal that the motorcycle was stolen, the officer ordered defendants to accompany him to the police station, because defendants had no proof of ownership and one defendant was a convicted burglar. The appellate court ruled that there was a search and that under the plain-view doctrine, in addition to an initial lawful intrusion which affords the authorities the opportunity for the plain view, it is necessary to establish that the incriminating nature of the evidence in plain view was immediately apparent to the arresting officers.

In this case there was also a search. The incriminating nature of the evidence, the tire tool, could not be immediately apparent to the arresting officers, because the possession of a tire tool under the driver's seat is not a violation of the law. (Ill. Rev. Stat. 1975, ch. 38, par. 24—1.) Therefore, there was no justification for asking defendant to put the tire tool in the trunk, and everything from that point onward was an impermissible search and seizure.

■■■ The State contends that defendant consented to the search. Under the fourth and fourteenth amendments to the United States Constitution, a search conducted without a warrant issued upon probable cause is per se unreasonable, subject only to a few specifically established and well-delineated exceptions. One of the specifically established exceptions to the requirement of both a warrant and probable cause is a search that is conducted pursuant to consent. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041.) However, consent is ineffective to justify a search when a search or entry made pursuant to consent immediately following an illegal search, involving an improper assertion of authority, is inextricably bound up with illegal conduct and cannot be segregated therefrom. (*People v. Lawler* (1973), 9 Cal. 3d 156, 507 P.2d

621, 107 Cal. Rptr. 13; see also *State v. McMahon* (1977), 116 Ariz. 129, 568 P.2d 1027.) Stated another way, mere acquiescence to apparent authority is not necessarily consent. (*Raleigh v. State* (Fla. App. 1978), 365 So. 2d 1048.) The officer engaged in impermissible conduct when he "asked" defendant to put the tire tool in the trunk, because possession of a tire tool in a motor vehicle is not illegal. (Ill. Rev. Stat. 1975, ch. 38, par. 24—1.) It matters not that at the officer's "request" defendant conducted the preliminary search by dragging various items from under the seat, or that the defendant "consented" to the search which led to the officer's discovery of the cannabis, because the "request" and everything occurring after it was made was an unreasonable search which violated defendant's constitutional rights under both the United States and Illinois Constitutions. We conclude that defendant's consent and prior illegal search conducted at the officer's command are inextricably joined; that the consent, being itself the fruit of an illegal assertion of authority, cannot justify a further illegal search. From the totality of the circumstances, the inescapable conclusion is that defendant's "consent" was a passive submission to authority and not a voluntary relinquishment of a right. The facts do not justify the conclusion that defendant consented except as the consent was secured by the officer's demand and the authority of his office. The foregoing does not amount to a waiver of defendant's constitutional rights. See *People v. Harr* (1968), 93 Ill. App. 2d 146, 235 N.E.2d 1.

Other jurisdictions have dealt with the issue which is presently before this court. In *Sayne v. State* (1972), 258 Ind. 97, 279 N.E.2d 196, Sayne's motor vehicle was stopped by the police solely for the reason that the automobile's right headlight was not functioning. Prior to stopping Sayne, the officer knew that Sayne did not own the automobile and had heard that he had a criminal record although the officer was not cognizant of the details. As the defendant's automobile was stopping, he raised his hand up to the sunvisor area and then dropped his hand. The officer informed the defendant of the headlight violation and asked for his driver's license, which defendant produced. The officer then asked the defendant to pull down the sunvisor because the officer had no idea what had been placed there. A plastic bag containing a small amount of cannabis had been hidden between the windshield and the canvas convertible top. The Supreme Court of Indiana ruled that the defendant's motion to suppress evidence should have been granted because the prosecution, which relied on consent to justify the search, failed to meet its burden of proving that the consent was, in fact, freely and voluntarily given. That court further ruled that although consent may constitute a waiver of fourth amendment rights, such waiver must be an intelligent relinquishment of a known right or privilege, and waiver cannot be conclusively presumed from a verbal

expression of assent. That court concluded that the facts indicated that defendant's "consent" constituted nothing more than passive submission to search and therefore was not a voluntary relinquishment of a known right.

In *Keener v. State* (Fla. App. 1974), 290 So. 2d 513, Keener's automobile was stopped for a taillight violation. A check of defendant's driver's license and the license plates revealed that there was nothing amiss. The officer testified that his curiosity was aroused and he began to interrogate Smith, a passenger, about an ordinary brown grocery bag which was under the seat. Finally Smith grabbed the bag, threw it across the automobile to the floorboard on the driver's side, told the officer, "I guess I don't have a name," and fled. The Florida court ruled that the defendant's motion to suppress should have been granted, because he went too far without legal cause in questioning Smith.

In *Kolb v. State* (Tex. Crim. App. 1976), 532 S.W.2d 87, an informer told the authorities that Emil Cross had stored 400 pounds of cannabis in a locker numbered 94 or 95 at a certain location. The informer, who had given reliable information in the past, described the Cross car and its license number. The officers found lockers 94 and 95 locked and found no evidence that Cross was in the area or that he had rented either locker. The officers returned approximately five hours later without a warrant and again saw no evidence of Cross or his van in the area. However, they found Locker 94 unlocked. They knocked on the door and a male voice responded. They identified themselves as police officers and told the person who answered to open the door. One of the officers began to open the door and believed someone assisted him from the inside, although he was not sure. When the door opened, they saw Kolb, whom they did not know, and smelled cannabis. With the aid of a flashlight, the officers observed 132.8 pounds of cannabis. The Texas court ruled that the cannabis should have been suppressed, because if Kolb in any way assisted the officer in opening the door, it was in submission to the demand of the officers and not as a result of a voluntary consent.

In *People v. Lawler* (1973), 9 Cal. 3d 156, 507 P.2d 621, defendant and two companions were hitchhiking. An officer testified that because defendant seemed nervous and kept grabbing at his sleeping bag as if he wanted to leave, he conducted a "routine" pat-down search of the sleeping bag for weapons. The officer concluded that he felt an automatic weapon in the sleeping bag. The "automatic weapon" turned out to be a combination fork, knife and spoon utensil, which is commonly used by campers. Several bags of cannabis also fell out. The pat-down search of the sleeping bag was conducted prior to any search of the defendant. The Attorney General contended that the opening of the sleeping bag was an act of consent, which rendered admissible the evidence discovered by the

search of that bag. The California Supreme Court affirmed the suppression of evidence and ruled that the consent and prior illegal pat-down search of the sleeping bag were so inextricably joined that the consent being itself the fruit of an illegal assertion of authority, cannot justify a further illegal search.

In *State v. McCray* (1975), 46 Ohio App. 2d 106, 345 N.E.2d 456, the defendant was stopped for a headlight violation. He got out of his automobile and presented his driver's license. The officer went to the passenger side of the automobile and asked the passengers to get out. The officer then stuck his head inside the automobile and with the aid of a flashlight saw what appeared to be a cannabis pipe. He looked around, found two beer cans and reached down to pick up the cans and found a bag containing what he believed to be cannabis. The Ohio court ruled that the pipe should have been suppressed as well as the package of cannabis. The court further ruled that the very act of removing the one passenger on the right side of the automobile was in the nature of a "search" in that the officer removed an obstacle which obstructed the vision of the officer. So, too, is the removal of the tire tool from under the front seat a search. In this case the officer was obviously attempting to find something with which to justify a full search of the automobile; therefore, we conclude that anything occurring after defendant identified himself was an impermissible search which violated the right of privacy and security of the defendant.

Since the only evidence of the offense charged in this case should have been suppressed, we reverse the conviction.

Accordingly, the judgment of the Circuit Court of Shelby County is reversed.

Reversed.

KUNCE, J., concurs.

Mr. JUSTICE KASSERMAN, dissenting:
In my opinion the judgment of the circuit court should be affirmed. The evidence indicates that the search by the officers was proper as a plain-view search of the vehicle; therefore, defendant's consent was not rendered ineffective because it followed an illegal search.

The officers observed a portion of the tire iron protruding from under the driver's seat and asked defendant to remove it and place it in the trunk. In complying with the request of the officers, an iron pipe and a kitchen knife were exposed when defendant removed the tire iron from under the seat. The discovery of these items would have entitled the officers to further examine the vehicle from the outside, which they did

90

with the use of a flashlight. Their examination disclosed what appeared to be marijuana seeds and part of a marijuana cigarette in the ashtray and justified the further search. It is of no consequence that the officers were using a flashlight when they observed the contents of the ashtray since the use of artificial light to observe that which is in plain view would not alter the plain-view doctrine. See *People v. Bambacino* (1972), 51 Ill. 2d 17, 280 N.E.2d 697.