(No. 24465.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN J. TOBIN, Plaintiff in Error.

*Opinion filed June 15, 1938.*

· W. G. Anderson, for plaintiff in error.

Otto Kerner, Attorney General, Thomas J. Courtney, State's Attorney, and A. B. Dennis, (Edward E. Wilson, John T. Gallagher, Melvin S. Rembe, and Blair L. Varnes, of counsel,) for the People.

Mr. Justice Jones delivered the opinion of the court:

Defendant, John J. Tobin, was convicted of manslaughter in the criminal court of Cook county. A jury was waived and the cause was tried before the court. The errors relied upon for reversal are that the *corpus delicti* was not proved beyond a reasonable doubt, that the homicide was excusable as by misadventure, and that defendant's guilt was not proved beyond a reasonable doubt.

The evidence is that about 11 :00 o'clock on the evening of March 5, 1937, Joseph Burrage, the deceased, and Carrie Thompson, got into a Yellow Cab driven by defendant Tobin at Thirty-third street and Indiana avenue, Chicago, and directed defendant to take them to the elevated station at Twelfth and Wabash. Tobin drove north on Indiana avenue to Eighteenth street, then west to Michigan avenue, running through a red light as he turned right on to Michigan avenue. He continued on Michigan to Sixteenth street and there ran through another red light, hitting the rear end of a car driven by one Breakstone. Tobin continued northward on Michigan avenue until he came to Fourteenth street and there turned east, and soon after turning hit a motorcycle, which had both head and tail lights on. The motorcycle was being driven by a policeman in full uniform. Defendant continued to Indiana avenue, turned south, traveled about a block and ran into an American Railway Express Agency truck, which was parked in front of the express agency platform on the east or left side of the street.

The lights of the truck were on. After this collision Tobin ran across a prairie approximately 150 feet from the scene of the accident, and was found lying face down by policeman John Dzincilioski, whose motorcycle Tobin had hit. Dzincilioski testified that Tobin was intoxicated and could not talk.

Burrage was in good health when last seen by his wife about 6:45 o'clock on the evening of the accident. That evening he had visited until 10:30 o'clock at the home of a friend who lived four blocks from the place Burrage entered the taxicab. His wife testified that she saw him in St. Luke's Hospital the next day and that he finally died June 1, 1937. The coroner's physician, Dr. Kley, performed an autopsy on the body of Burrage at the St. Luke's Hospital. By stipulation his testimony before the coroner's jury was admitted in evidence. He minutely described his findings and said that, in his opinion, Burrage's death was caused by crushing injuries of the spinal cord at the left interspace between the fifth and sixth cervical vertebrae. It was further stipulated that the man who was injured in the taxicab is the same man who went to St. Luke's Hospital, and the same man who died, and the same man Dr. Kley examined. Anthony J. Smith, driver of the express truck, testified he lifted Burrage, who was in a crouched position in the floor of the cab, to the seat, and Burrage hollered when he did so.

The People contend that inasmuch as all of the errors assigned relate to the weight and sufficiency of the evidence, they cannot be considered on review because the issue was not raised in the trial court by a motion for a new trial, citing *People* v. *Lehner*, 335 Ill. 424, *People* v. *Gabrys*, 329 id. 101, and *People* v. *Marshall*, 309 id. 122. However, all of these cases were tried by a jury. It has long been the rule in Illinois, in civil cases, that in causes tried by a court without a jury a motion for a new trial is unnecessary to preserve questions of the sufficiency of the evidence.

(*Sands* v. *Kagey*, 150 Ill. 109; *Jones* v. *Buffum*, 50 id. 277; *Mahony* v. *Davis*, 44 id. 288; *Metcalf* v. *Fouts*, 27 id. 110.) We said in *Mahony* v. *Davis*, "The judge having once passed upon the evidence, it was not necessary to go through the form of submitting it to him again by moving for a new trial." The same reasoning applies with equal force to criminal cases tried by the court without a jury, and, therefore, questions of the sufficiency of the evidence were properly preserved for review though no motion for a new trial was made.

To sustain the contention that the *corpus delicti* was not proved beyond a reasonable doubt, counsel for defendant argues that it was not proved Burrage received an injury in the automobile collision or that he died as a result of any such injury he may have sustained. He points out that four hours had elapsed after deceased was last seen by his wife, during which time he may have been injured before entering the taxicab. He also argues that it was not shown deceased remained in the hospital from the time he was first taken there until his death three months later, so he may have been fatally injured after the taxicab collision. Much emphasis is also placed upon the fact that Carrie Thompson testified she did not know what happened to Burrage at the collision; however, that is of no importance, since she testified she was dazed and temporarily unconscious at that time. It is our opinion the *corpus delicti* was properly proved. The *corpus delicti* may legally be proved by circumstantial evidence. (*Hoch* v. *People*, 219 Ill. 265.) The evidence is that Burrage was in good health at 6:45 o'clock on the evening of the collision; that immediately prior to entering the taxicab he had visited for three hours at the home of a friend; that he was standing on the street when he hailed the taxicab, which he could not have done if he had had crushing injuries of the spinal cord at the left interspace between the fifth and sixth cervical vertebrae, of which he died. It was stipulated that he was injured in this col-

lision, that he was taken to St. Luke's Hospital and that he died there. The testimony of Mrs. Burrage was that she saw him in the hospital the day after the collision and that he finally died there. The plain implication is that he was in the hospital continuously from the time of the injury to the time of his death. There is not a suggestion in the evidence that he was not in the hospital all this intervening time or that he received any other injury elsewhere. The trial court was warranted in finding that Burrage died as a result of injuries received in the taxicab collision.

According to Tobin's testimony, he was not intoxicated but had had only two glasses of beer with two sandwiches. He testified that a taxicab strike was in progress, but that he had been ordered to go to work or be discharged; that he noticed a car behind him and feared strikers were following him and would wreck his car and injure himself and the passengers; that about 10 or 15 feet before he hit the Breakstone car a car pulled alongside him and someone yelled "Get over, Fink!" that he became frightened, did not remember striking the motorcycle or the express truck, did not remember running across the prairie, did not remember being found by the policeman, and remembered nothing until he was in the police station. Carrie Thompson testified that she noticed no one following them, though she looked through the rear window when Tobin ran through the first stop sign; that she heard no one yell "Get over, Fink!" though the windows of the car were down. She admitted that the car was being properly driven until Tobin drove through the first stop sign. Tobin was driving between thirty and forty miles per hour.

Defendant's contention that the homicide was excusable, by misadventure, is based wholly upon his testimony that he became frightened when he saw someone following him, calling him a "Fink," and telling him to get off the street; and that he drove as he did in order to protect himself and his passengers from bodily harm or possible death. His

testimony about someone following him and shouting to him to get off the street is uncorroborated and is directly contradicted by that of Carrie Thompson. Moreover, defendant's testimony that he was not intoxicated is contradicted by officer Dzincilioski. The finding of the trial court is conclusive as to the credibility of witnesses and the weight of their testimony when the evidence is clear and convincing. *People* v. *Blumenfeld,* 351 Ill. 87; *People* v. *Vozel,* 346 id. 209.

We are convinced that the record establishes the gross or criminal negligence of the defendant, while driving the taxicab, as the cause of Burrage's death.

The judgment is affirmed.                *Judgment affirmed.*