THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JIMMY SWEENY, Defendant-Appellant.

Fifth District  No. 77-9

Opinion filed February 17, 1978.

G. MORAN, J., specially concurring.

Ralph Ruebner and Victoria J. Meyers, both of State Appellate Defender's Office, of Chicago, for appellant.

Stephen L. Spomer, State's Attorney, of Metropolis (Bruce D. Irish and Martin N. Ashley, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by defendant, Jimmy Sweeny, from the judgment entered by the circuit court of Massac County on a jury verdict finding him guilty of armed robbery.

On March 13, 1976, two men armed with guns gained entrance to the home of Eugene and Ruth McBeth and robbed them of cash and various United States Savings Bonds. At the time of trial Eugene McBeth was deceased. Ruth McBeth testified that at approximately 4 or 4:15 p.m. on the date of the incident, the two men came to the door of the McBeth home and they identified themselves as FBI agents investigating a shooting purportedly involving the McBeths' son. Ruth McBeth positively identified defendant at trial as the taller of the two men. She stated that at that time he was clean-shaven and wore dark glasses. When Eugene McBeth asked the two men to show their identification, defendant's accomplice produced a gun and he and defendant forced their way into the house. Ruth McBeth was standing next to her husband as defendant took her husband's wallet. The McBeths were then ordered to sit down, and while they were there held at gun point by the accomplice, defendant searched through the house. After looking through their desk drawers defendant briefly left the house. When he returned he ordered the McBeths into their bedroom. They complied. Ruth McBeth stated that when she next saw defendant, he was in the living room emptying her purse onto a couch. Thereafter the McBeths were tied with wire and tape and defendant and the accomplice left the premises.

The entire incident lasted approximately 15 minutes. Ruth McBeth stated that there could be no mistake about her identification of defendant because she had "looked right at his face." She admitted that at the time of the incident she had described defendant as weighing between 180 and 200 pounds but she stated that she was "not very good on weights of men." She also stated that she had not seen a scar on defendant's face.

Also testifying on behalf of the State was Allen Atwood. He admitted having two prior convictions for aggravated assault and resisting arrest. He stated that on July 12 or 13, 1976, he, defendant's ex-wife Donna and another woman, went to defendant's apartment where they took various papers belonging to defendant. Defendant was not present at that time. The papers were placed in a sack and were brought to the home of

defendant's cousin. Subsequently, Atwood took the papers to his parents' camper. Thereafter the papers were turned over to the police who inspected the contents and found what were identified as the missing United States Savings Bonds taken from the McBeths' home. Atwood acknowledged that he did not know whether the papers actually were defendant's nor whether anyone had added or subtracted from their contents after he had taken them.

In his own behalf, defendant testified denying that he had committed the crime charged. He stated that he had a long scar on the left side of his face and that he had always worn a partial beard and mustache. He described his weight as between 250 and 270 pounds. Various other witnesses also testified that defendant had a scar on his face and that he wore a mustache and sideburns.

Detective Bill Reineking testified as a defense witness that on July 13, 1976, while defendant was in custody, the McBeths were shown a group of photographs for purposes of identification and that on July 19, 1976, a lineup was conducted both of which involved defendant. Reineking stated that the defense attorney was not present during the photographic identification procedure because he had not been appointed at that time. He further stated that the defense attorney was present in the room where the lineup was assembled but was denied permission to enter the separate room from which the McBeths viewed the lineup and made their identification. On cross-examination by the State, Reineking stated that from the photographs and the lineup, the McBeths identified defendant as one of the men who committed the crime, and that in each case they had done so without any suggestion being given to them as to whom, if anyone, to choose.

On appeal defendant first contends that he was not proven guilty beyond a reasonable doubt. He attempts to establish this proposition by arguing, first, that there exist substantial discrepancies between Ruth McBeth's description of the offender and the actual physical appearance of defendant; second, that the eyewitness did not have a sufficient opportunity to view the offender; and third, that the evidence that the stolen bonds were among defendant's papers was insufficient to prove his guilt since many people had access to the papers.

■■■ At issue is only the question of identity. It is well settled that a positive identification by a single witness with ample opportunity to observe is sufficient to support a conviction. (*People v. Jones*, 60 Ill. 2d 300, 325 N.E.2d 601; *People v. Williams*, 60 Ill. 2d 1, 322 N.E.2d 819.) In the instant case, the eyewitness positively identified defendant as the offender. Defendant speculates that the witness could only have viewed the offender for no more than five minutes out of the 15 minutes during which the robbery took place. We find that even if such speculation were supported by the record, such would have provided an ample

opportunity to observe the offender under the circumstances. However, the record shows that in fact Ruth McBeth observed defendant throughout the robbery. Her description of his activities was extensive and detailed. She observed him under circumstances in which her concentration would be distracted by little else. That discrepancies exist between her description of the offender and the appearance of defendant with regard to facial hair, a facial scar and the weight of defendant does not cast serious doubt upon the identification. Of course, such differences cannot be accurately measured based on a cold record but we note that the trial judge, in denying defendant's motion for a directed verdict, found that the discrepancies at issue were not substantial. In any event, such discrepancies only go to the weight to be afforded to the identification testimony. (*People v. Arroyo*, 18 Ill. App. 3d 187, 309 N.E.2d 804.) Such falls within the province of the jury, and we will not substitute our judgment for that of the jury on these questions. (*People v. Stringer*, 52 Ill. 2d 564, 289 N.E.2d 631.) Despite whatever probative value may be assigned to the evidence of the bonds, the positive identification testimony of the eyewitness alone is sufficient to support the jury's determination of the guilt of defendant.

Next defendant contends that error was committed when the State brought out in its cross-examination of Detective Reineking that the McBeths had identified defendant from the photographic display and from the lineup. This issue was not raised in defendant's motion for a new trial.

■■ It has long been well established that generally the failure to raise an issue in a post-trial motion constitutes a waiver of that issue and such may not then be urged as a ground for reversal on appeal. (*People v. Pickett*, 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Irwin*, 32 Ill. 2d 441, 207 N.E.2d 76; *People v. Price*, 32 Ill. App. 3d 610, 336 N.E.2d 56; *People v. Morgan*, 44 Ill. App. 3d 459, 358 N.E.2d 280.) Hearsay identification testimony may constitute plain error where such testimony is utilized as a substitute for an in-court identification, or when it is used to strengthen a weak identification. (*People v. Smith*, 18 Ill. App. 3d 859, 310 N.E.2d 734.) However, in the instant cause we find neither of these conditions existing in the record in light of the positive identification testimony of Ruth McBeth. Since defendant failed to have properly preserved the issue in his post trial motion, we deem him to have waived it. In any event, since defendant opened the door to such testimony by his direct examination of Reineking, he cannot now be heard to complain of such testimony on appeal. *People v. Denham*, 41 Ill. 2d 1, 241 N.E.2d 415, *cert. denied* (1969), 394 U.S. 1006, 22 L. Ed. 2d 784, 89 S. Ct. 1605.

■■ Defendant also alleges error in the following cross-examination of defendant by the State:

"Q: Do you know Albert Merkel?

A: Yes, sir, he is my cousin.

Q: Did you ever make any statements to him about taking any money or bonds for security?

A: No, sir.

Defense Counsel: Objection. We didn't go into that testimony about Merkel.

The Court: It may stand."

On appeal defendant contends that this questioning constituted an improper insinuation, unsupported by evidence, that defendant made an admission to Merkel as to taking the stolen bonds. However, this issue was not brought to the attention of the trial court during trial and, as defendant's previous contention, was not contained in the motion for a new trial. Consequently, we deem it waived.

In anticipation of his waiver of the two previous contentions, defendant has filed *pro se* a supplemental brief in this appeal in which he contends that a waiver rule based upon section 116—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 116—1), constitutes an unconstitutional infringement of the judicial powers enumerated in the Illinois Constitution of 1970. (See, *People v. Hammond*, 48 Ill. App. 3d 707, 709-716, 362 N.E.2d 1361, 1362-1367 (dissenting opinion).) Underlying this contention is the premise that the rule of waiver in the filing of a post-trial motion is created by the statutory provision. It is not. Section 116—1 provides as follows:

"(a) Following a verdict or finding of guilty the court may grant the defendant a new trial.

(b) A written motion for a new trial shall be filed by the defendant within 30 days following the entry of a finding or the return of a verdict. Reasonable notice of the motion shall be served upon the State.

(c) The motion for a new trial shall specify the grounds therefor." Ill. Rev. Stat. 1975, ch. 38, par. 111—1.

■■ Although circuit courts have the inherent power to grant new trials (*People v. Preston*, 345 Ill. 11, 177 N.E.2d 761), section 116—1 nonetheless statutorily empowers a court to grant, and gives a defendant the statutory right to request, a new trial. Its function, generally, is to permit a defendant to seek a review of the proceedings, by the trial court itself, so as to obviate the necessity of an appeal where a meritorious claim of error is made. By it, a defendant may avoid the delay and expense inherent in an appeal and may have his objections considered by the court which is in the best position to pass upon the trial errors alleged. (See *People v. Lamparter*, 56 Ill. App. 3d 823, 371 N.E.2d 997.) To accomplish this task section 116—1 provides for a fair and orderly

procedure by requiring the motion to be filed before an appropriate time limit and to be in writing with specificity and reasonable notice to the State. Section 116—1, however, only addresses post-trial procedure in the trial court. It contains no reference to the waiver rule or to appellate procedure and it prescribes no consequences for a failure to comply with its terms. Particularly, it does not mandate the application of the rule of waiver in a reviewing court. (*Ottawa, Oswego & Fox River Valley R.R. Co. v. McMath*, 91 Ill. 104.) Thus in *People v. Flynn*, 8 Ill. 2d 116, 133 N.E.2d 257, the court overruled *People v. Jankowski*, 391 Ill. 298, 63 N.E.2d 362, which had held that a predecessor statute of section 116—1 was mandatory in all criminal cases. In *Flynn* the court held where the State raised no objection to the presentation of an oral motion for a new trial, the statute does not preclude a defendant from assigning alleged errors on appeal. (See also *People v. Whitehead*, 35 Ill. 2d 501, 221 N.E.2d 256.) Similarly, it has been held that following a bench trial, the failure to move for a new trial does not preclude a defendant from raising evidentiary matters on appeal where the trial court has had the opportunity to consider the matter during trial. *People v. Tobin*, 369 Ill. 73, 15 N.E.2d 687; *People v. Ford*, 21 Ill. App. 3d 242, 315 N.E.2d 87.

These cases support the view that the waiver rule is not one created by the statute but rather, is a court-created rule of procedure on appeal. As stated in *People v. Burson*, 11 Ill. 2d 360, 370, 143 N.E.2d 239, 245: "[T]his is a rule of administration and not of jurisdiction or power." Reviewing courts have applied the rule in order to require defendants to file written, specific motions for a new trial where under the circumstances the enforcement of the rule best serves the interests of a fair, orderly and expeditious administration of justice. (*People v. Pickett*, 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Irwin*, 32 Ill. 2d 441, 207 N.E.2d 76.) The purposes of the waiver rule are correlative to the object of section 116—1: (1) to insure that the trial court is informed of possible errors so that the court has an opportunity to correct those errors; (2) to give the reviewing court the benefit of the judgment and observations of the trial court with regard to the issues raised on appeal; (3) to prevent a defendant from objecting to that in which he has acquiesced throughout the course of the trial; (4) to eliminate unnecessary reviews and reversals; and (5) to prevent the possibility of unlimited litigation. *People v. Pickett; People v. Irwin; People v. Morgan*, 44 Ill. App. 3d 459, 358 N.E.2d 280.

■■ The waiver rule receives implicit recognition and approval in Supreme Court Rule 615(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)), which provides in part: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." This Supreme Court Rule equally indicates that the filing of

a motion for a new trial is not a prerequisite to an appeal (see also Supreme Court Rule 606(a)), although where a defendant fails to file any post-trial motion, written or oral, and the reviewing court finds nothing to consider, a dismissal of the appeal may be appropriate (*People v. Hammond*, 48 Ill. App. 3d 707, 362 N.E.2d 1361).

Since then, we conclude that the waiver rule is not a product of section 116—1 but is merely consonant with it, we find defendant's contention to be without merit.

■■ Lastly, defendant contends that his defense counsel was improperly barred from being present at the lineup identification of defendant. Counsel had been permitted to be present in the room where the lineup was assembled but was denied access to the separate room from which the McBeths viewed the lineup and made their identifications. In *People v. McDonald*, 23 Ill. App. 3d 86, 318 N.E.2d 489, *aff'd*, 62 Ill. 2d 448, 343 N.E.2d 489, the court stated that defense counsel must not only be present at a post-indictment lineup but also at any identification made therefrom. In *McDonald*, the defense counsel was present at the lineup but was not present when the complaining witness identified defendant after the lineup. The appellate court, however, as did the supreme court, held that any error arising from the lineup identification testimony at trial was harmless beyond a reasonable doubt because the in-court identification by the witness had an origin independent of the identification procedures of which there was complaint.

In the instant case, bearing in mind as previously mentioned, that the lineup identification testimony was invited by defendant's direct examination of Detective Reineking, we find, in any event, that any error arising from such testimony was harmless beyond a reasonable doubt. The record is barren of evidence that the identification procedure complained of was so impermissibly suggestive as to give rise to the substantial likelihood of irreparable misidentification as insinuated by defendant. (See *People v. Porter*, 29 Ill. App. 3d 456, 330 N.E.2d 599, and cases cited therein.) The evidence, in fact, shows the contrary. Further, we conclude that Ruth McBeth had an ample opportunity to observe defendant at the time of the commission of the crime and thus any error in the identification process at the lineup was overcome. *People v. McDonald.*

Accordingly, for the foregoing reasons we affirm the judgment entered by the circuit court of Massac County.

Affirmed.

KARNS, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, specially concurring:

I concur in the result reached by the majority, but I dissent from that portion of the majority opinion which upholds the validity of section 116—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 116—1).