THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ALBERT E. BROWN, Defendant-Appellant.

Third District   No. 3—86—0020

Opinion filed December 12, 1986.—Rehearing denied January 27, 1987.

536

Frank W. Ralph and Scott C. Newman, both of State Appellate Defender's Office, of Ottawa, for appellant.

William Herzog, State's Attorney, of Kankakee (Walter P. Hehner, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WOMBACHER delivered the opinion of the court:

The defendant, Albert E. Brown, appeals his convictions for criminal trespass to residence and resisting a peace officer (Ill. Rev. Stat. 1985, ch. 38, pars. 19—4, 31—1). Although the indictment also charged him with home invasion (Ill. Rev. Stat. 1983, ch. 38, par. 12—11(a)(1)), he was acquitted of that charge after the jury returned a verdict of not guilty.

The defendant challenges the sufficiency of the evidence to support either conviction. Further, he complains of the trial court's re-

fusal of the defendant's tendered jury instruction regarding self-defense and its rulings on the State's objections to the testimony of several witnesses. We affirm.

A detailed account of the evidence is necessary for a coherent analysis of whether the trespass offense was proved beyond a reasonable doubt. The following version of the facts is based on the testimony of the victim, Regina McDaniels.

The defendant had lived with the victim for about four or five weeks in the house as to which he was charged with trespass. Approximately five days before the incident in question, Regina had packed his belongings and left them on the front porch. Albert still had keys to the house, although, unbeknownst to him, Regina had had the front-door lock changed.

Regina testified that early in the morning of August 6, 1985, she was awakened abruptly by someone slapping her face. She saw the defendant standing by her bed holding a stick. Regina pulled out a hand gun which she slept with, and pointed it at Albert. They talked for awhile, with the defendant mainly trying to persuade Regina to put the gun down and "straighten this out."

The two then moved into the bathroom and had a conversation about "old matters" for about 10 or 20 minutes. Regina sat on the sink, pointing the gun at the defendant from beneath her leg while Albert held her by the arms.

Darroll McDaniels, age 10, testified that he awoke and heard his mother talking to someone in the bathroom. Without being noticed by Regina or the defendant, Darroll looked in the bathroom and saw his mother seated on the sink with Albert holding her by the wrists. He climbed out his bedroom window and went on foot to the home of his great-aunt, Henrietta Gibson, about a block away. His great-aunt called the police, and an officer arrived a few minutes later and accompanied Darroll back to his home.

When no one answered the officer's knock at the front door, the policeman asked Darroll to go in the house through a front window. Darroll testified that the window screen was open and the raised screen was torn, which it had not been earlier that day. He opened the door for the officers, who went in and spoke with Regina and Albert, took Albert's stick away and went outside. Regina testified that she told one of the officers that Albert had broken in, and that she "indicated" that she had a weapon. However, she told them that she and the defendant were talking, and apparently the officers were preparing to leave.

Before the officers left the premises, Henrietta Gibson arrived

and an altercation ensued between her and Albert. Consequently, the police then escorted the defendant from the house and placed him under arrest for the alleged battery of Regina's aunt, an offense with which he was never charged.

The defendant testified as the sole witness in his defense. He maintained that he had moved out of the house in early July, but that Regina had allowed him to keep a set of keys so that he could come and go as he wished.

Albert testified that he did not return to the house from the day he moved out until August 6, at about 1 a.m. Besides just wanting to be with Regina, he said he needed to ask her for money to buy a prescription. Regina did not answer his knock at the front door or his call outside her bedroom window. He testified that since he had forgotten to bring his keys, he raised the screen on the living-room window, opened the window and climbed through.

The defendant claimed that he woke Regina by shaking her shoulder, and asked her to come and look at some stitches on his hand. They went into the bathroom where Regina sat on the sink and they "smooched" and talked about marriage for about 45 minutes.

■■ The defendant contends that the State's evidence was insufficient to prove that he entered the house without authority. He places great emphasis on the fact that Regina permitted him to retain a set of keys after he moved out, as symbolizing an invitation to enter when he wished. See *People v. Hudson* (1983), 113 Ill. App. 3d 1041, 448 N.E.2d 178.

According to Ms. McDaniels' testimony, however, the only reason that she allowed the defendant to keep the keys was that when she asked him to give them back, he insisted that she reimburse him for the expense of having had them duplicated. She didn't have the money at the time, and she testified that she knew that she could bolt lock the door to keep him out anyway, so she let him have the keys. In addition, she had her uncle change the front-door lock the next day.

Although the testimony of the victim contradicts that of the defendant, it is the function of the jury to determine the credibility of the witnesses and the weight to be given their testimony. (*People v. Bragg* (1984), 126 Ill. App. 3d 826, 467 N.E.2d 1004.) A reviewing court will not set aside a jury's verdict unless the evidence is so improbable as to raise a reasonable doubt of guilt. *People v. Winfield* (1983), 113 Ill. App. 3d 818, 447 N.E.2d 1029.

The defendant attempts to show the improbability of Regina's testimony by citing her testimony regarding an occasion about two weeks prior to the break-in, when Regina removed Albert's house

keys from his key ring without his knowing it. When he came home that night and could not open the door, Regina appeared at the window, laughed at Albert, and gave the keys back to him after letting him in.

In addition, the defendant points out that Regina's testimony concerning the double-locking or bolt locking of her front and back doors on the night of the incident was inconsistent. She was also somewhat unclear about whether her uncle changed the lock on the front door before or after the break-in. Nevertheless, she did state that the back door is always "blocked off," and that she keeps the doors double-locked while she is asleep at night.

Finally, the defendant submits that the victim's testimony about her past relationship with Albert and her actions on the night in question, such as using the toilet while the two were in the bathroom together, and feeling "disappointed" when the police arrived, renders her other testimony as to the defendant's authority to enter the house implausible.

■ We consider the evidence which suggests that the nature of Ms. McDaniels' feelings regarding the defendant may have been somewhat ambivalent, both in the past and on the night of the break-in, to be collateral to the issue of whether the defendant had the authority to enter her home. Where discrepancies in the testimony of a witness relate only to collateral matters, they need not render the testimony of the witness on material issues improbable or incredible. *People v. Kosyla* (1984), 129 Ill. App. 3d 685, 472 N.E.2d 1207, *cert. denied* (1985), 474 U.S. 832, 88 L. Ed. 2d 82, 106 S. Ct. 101.

■ It is the general rule that minor inconsistencies in the testimony of a witness do not render the testimony unworthy of belief and affect only the weight to be given the testimony. (*People v. Roper* (1983), 116 Ill. App. 3d 821, 452 N.E.2d 748.) The trier of fact may find the witness credible despite such inconsistencies. (*People v. Spencer* (1983), 119 Ill. App. 3d 971, 457 N.E.2d 473.) Therefore, we find that the victim's testimony as to the defendant's nonauthority to enter was not so improbable as to raise a reasonable doubt as to defendant's guilt.

■ Furthermore, the jury's opinion in regard to the victim's credibility was undoubtedly affected by its consideration of the defendant's account. Weighing the defendant's version against the victim's testimony, we find that it was not unreasonable for the jury to reject the defendant's story. The jury is not compelled to accept a defendant's account of what happened at the time of the crime, but is permitted to consider the surrounding circumstances and the probability

or improbability of the defendant's theory. *People v. Duncan* (1985), 133 Ill. App. 3d 489, 478 N.E.2d 1125.

Even assuming that the jury accepted the defendant's story rather than the victim's, its verdict is not contrary to the evidence. We find that the defendant's manner of entry into Ms. McDaniels' home could not reasonably be construed to be pursuant to any invitation which arose from his possession of a set of keys.

The defendant testified that when no one answered his knock or his call, he went in through a window. The evidence supports the conclusion that he tore or cut the screen in order to get in the house. Therefore, even if the jury were convinced that Regina did intend for Albert to be able to use his key to enter her house, they may reasonably have concluded that her invitation did not extend to a forced entry through a window. Thus, we do not believe that the defendant's conviction for trespass to residence was so palpably contrary to the evidence as to raise a reasonable doubt of guilt. See *People v. Fox* (1983), 114 Ill. App. 3d 593, 449 N.E.2d 261.

The defendant goes on to assert that the State failed to prove beyond a reasonable doubt that his entry without authority was knowing. The State disputes the defendant's contention that the criminal trespass to residence statute requires proof that the defendant had knowledge of his lack of authority to enter the residence. Further, the State claims that the issue was waived by the defendant's failure to raise it in his post-trial motion.

Directing our attention first to the waiver question, we note that this case is distinguishable from *People v. Caballero* (1984), 102 Ill. 2d 23, 464 N.E.2d 223, cited by the State, where our supreme court condemned the frequent practice of counsel in criminal cases failing to file written post-trial motions specifying the grounds for reversal. In the instant case, counsel for the defendant filed a written motion for new trial, specifying as one of the grounds the trial court's refusal to dismiss the charge of criminal trespass to residence. The stated grounds for dismissal was that the indictment was unconstitutionally vague because it failed to state whether the defendant must have knowledge of the nonauthority to enter a dwelling place.

Despite the defendant's characterization of the issue as one of a constitutional nature rather than as a reasonable doubt argument, as he now does on appeal, we find that the issue was adequately preserved for review. The post-trial motion assigned error on the issue of the requisite state of mind with sufficient specificity to inform the trial court and to give it the opportunity to correct the possible error, so the waiver rule does not apply. See *People v. Sweeny* (1978), 57 Ill.

App. 3d 879, 373 N.E.2d 663.

As for whether the fact of the defendant's knowledge of his non-authority is an element of the offense, we deem it unnecessary to resolve the issue. This conclusion is due to our finding, as previously stated, that the evidence established that the front-window screen was cut or torn on the day of the break-in. We believe that this evidence was adequate proof of the defendant's knowledge, whether or not such proof was required of the State under the statute.

■■ ■ In weighing evidence in a criminal prosecution, the trier of fact is not required to disregard natural inferences that flow normally from the evidence. (*People v. Gittings* (1985), 136 Ill. App. 3d 655, 483 N.E.2d 553.) Therefore, we find that the jury could reasonably have concluded from the evidence that the defendant gained unauthorized entry by cutting or tearing the screen, and that he knew such entry to be unauthorized. We do not find that the proof was so unsatisfactory or unconvincing that the verdict should be overturned. *People v. Szudy* (1982), 108 Ill. App. 3d 599, 439 N.E.2d 137.

■ The defendant's next assignment of error is that the State failed to prove him guilty beyond a reasonable doubt of resisting a peace officer. In support of the charge, the State presented the testimony of three officers from the city of Kankakee police department and one State trooper.

Although the testimony of the witnesses varied somewhat, the defendant and the State agree that the version told by Trooper Arceneaux was the most credible. Because the State trooper was not a member of the Kankakee police department, he was relatively unbiased. Also, he observed most of the events from his squad car, so he was the only witness who was not personally involved in most of the scuffle.

Trooper Arceneaux testified that Officer Vickery told the defendant twice that he was under arrest and asked him to place his hands behind his back. Both times, the defendant backed away, protesting, "Wait a minute, let's talk about this," and, "[Y]ou can't do this to me." Vickery then placed his arm around the defendant's neck in a chokehold, as a second officer grabbed the defendant's left arm to put handcuffs on him.

At that point, Trooper Arceneaux observed the defendant "freeze up into a rigid position" with his arms at his sides, so that his hands could not be placed together to be handcuffed. A third officer then came to the assistance of the other two, and when Trooper Arceneaux saw that they were unsuccessful in handcuffing the defendant, he got out of his car to help them. The four officers finally managed to get

one pair of handcuffs on each of the defendant's wrists, and then locked the two sets together.

Trooper Arceneaux's testimony differed most significantly from that of Officer Vickery, who testified that he did not use the chokehold until after the officers were unable to handcuff the defendant.

After the handcuffs were finally secured, the officers became aware that the defendant's right arm was bleeding where his stitches had come open.

The defendant maintains that his actions of holding himself rigid did not constitute resistance, citing our decision in *City of Pekin v. Ross* (1980), 81 Ill. App. 3d 127, 400 N.E.2d 992. We find the circumstances of the two cases to be distinguishable. In *Ross,* the defendant testified that he pulled his arms down and in front of him because the officers were hurting him by putting his hands behind his back and pushing them up high as they put the handcuffs on. We found that other than this, Ross did not struggle.

In contrast, the defendant's first reaction in the instant case was to back away and protest, before any of the officers had touched him. When he refused twice to place his hands behind his back, the officers resorted to force and the defendant responded by holding his arms stiff at his sides. According to Trooper Arceneaux, Brown was struggling to release himself from Vickery's grip, and doing everything he could to keep his arms from being placed behind his back. We believe that this evidence is sufficient to support the conviction.

We also are not persuaded by the defendant's argument that his resistance was justified in self-defense. Even accepting as true the testimony of Trooper Arceneaux that Officer Vickery employed the use of a chokehold before attempting to handcuff the defendant, the defendant's conduct does not represent the sort of actions which we might consider to be defensive.

Rather than attempting to prevent injury to himself, we perceive that Brown was endeavoring to avoid being arrested. His uncooperative initial response to being informed that he was under arrest resulted in Officer Vickery's use of force. The defendant's subsequent maneuvers to keep from being handcuffed did more to cause his own injury than to prevent it.

■ We now proceed to the defendant's contention that the trial court erred in refusing to give the defendant's tendered jury instruction on self-defense, Illinois Pattern Jury Instruction, Criminal, No. 24—25.06 (2d ed. 1981).

The defendant submits that this instruction is required in resisting-arrest cases when there is evidence of excessive force on the part

of the arresting officer. (*People v. Athey* (1976), 43 Ill. App. 3d 261, 356 N.E.2d 1332.) Because it is an affirmative defense, unless the State's evidence raises the issue of self-defense, the defendant must present some evidence thereon. (*People v. Bailey* (1982), 108 Ill. App. 3d 392, 439 N.E.2d 4.) However, only a slight amount of evidence is necessary to justify giving the instruction. *People v. Robinson* (1981), 92 Ill. App. 3d 972, 416 N.E.2d 793.

We do not find that the defendant's evidence raised the issue of self-defense. He admitted to struggling while he was being choked, and said that the choking made him dizzy. Nevertheless, he did not shove, strike, or kick any of the officers, nor did he testify that he feared for his safety. He claimed that he told Officer Houston about the stitches in his arm when Officer Vickery began trying to handcuff him, but he denied that he ever attempted to free himself from the people holding his arms.

The defendant further stated that his stitches were torn loose when the officers tried to put his hands behind his back. However, his explanation for holding his arms rigid was that the tendon in his hand was sewn together, which made his wrists stiff. Consequently, he claimed that when the officers touched him he stiffened-up in pain. At best, this would indicate that his reaction was involuntary.

Therefore, the defendant's own testimony failed to demonstrate that he had an actual belief that the use of force was necessary to avert the danger. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31.) On the contrary, it showed that, possibly, his actions were not conscious. While this evidence might have had some bearing on the question of the defendant's guilt on the resisting charge, it is insufficient to meet the minimal level required for the issuance of a self-defense instruction.

■■■ The final issue raised on appeal is whether the trial judge's rulings denied the defendant a fair opportunity to present his defense to the resisting-arrest charge. He claims that he was prevented from probing Officer Vickery's possible bias, interest, or motive to testify falsely by three rulings.

The first ruling occurred during defendant's cross-examination of Officer Vickery, when the trial court sustained the State's objection to the question, "Have you heard about police officers being sued?"

The defendant fails to provide any authority citing as reversible error the trial court's foreclosure of cross-examination regarding a peace officer's knowledge of civil lawsuits for excessive use of force during arrests. We find that, absent evidence of a particular bias on the part of this individual police officer/witness, his general awareness

of the possibility of civil liability was irrelevant to the issue of his credibility, and the court did not err in its ruling.

The second ruling assigned as error was the trial court's refusal, on relevance grounds, to permit the defendant to testify regarding any treatment he received for his torn stitches. The defendant argues that such evidence would have lent credibility to the defendant's testimony and would also have reflected upon the testimony of the police officers.

Our review of the record causes us to agree with the State's assertion that the error, if any, was waived by the defendant's failure to inform the court as to the relevance of the testimony or to preserve the question for review by making an offer of proof. (*People v. Gordon* (1980), 82 Ill. App. 3d 906, 403 N.E.2d 570.) The question which drew the State's Attorney's objection was, "When did you receive treatment?" After the court sustained the objection, defense counsel did not request a sidebar or make an offer of proof, but rather continued with his examination of the witness on other matters.

We find that the trial court properly sustained the objection, since we fail to see how the fact of when the defendant received treatment would have been relevant to any proposition at issue in the case. The relevance of evidence of a possible defense is a matter for the sound discretion of the trial court. *People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14.

The defendant also complains that the trial court erred in sustaining the State's relevance objection to his question to Officer Vickery as to whether he had asked to see Regina McDaniels' firearm owner's identification card. He argues that this question was relevant to Officer Vickery's alleged bias toward the defendant, but, again, he failed to offer any explanation to the court for the purpose of the testimony. He merely proceeded with his cross-examination. Since the relevance of the question is not self-evidence, we conclude that the trial court did not abuse its discretion in sustaining the objection.

Therefore, for the reasons stated herein, we affirm the judgment of the circuit court of Kankakee County.

Affirmed.

SCOTT, P.J., and STOUDER, J., concur.